THERESA PUFFINBERGER
1727 Saunders Way
Glen Burnie, MD 21061

           Plaintiff,

v.

COMMERCION, LLC
110 West Road, Suite 222
Baltimore, MD 21204

   Serve On:
   CSC-Lawyers Incorporating Service
   Company
   Resident Agent for Commercion, LLC
   7 St. Paul Street, Suite 1660
   Baltimore, MD 21202

AND

MARGOLIS, PRITZKER, EPSTEIN, &
BLATT, P.A.
110 West Road, Suite 222
Baltimore, MD 21204

   Serve On:
   Aaron Margolis, Esq.
   Resident Agent for Margolis,
   Pritzker, Epstein; & Blatt, P.A.
   One N. Charles Street
   505 Blaustein Bldg.
   Baltimore, MD 21201

           Defendants.

IN THE

CIRCUIT COURT OF MARYLAND

FOR

ANNE ARUNDEL COUNTY

Case No. C13-176695

CIVIL DEPARTMENT

2013 MAR 12 P 2: 10

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Theresa Puffinberger, by and through her undersigned attorneys, Kathleen P. Hyland and Civil Justice, Inc., hereby file this Complaint against Commercion, LLC, and Margolis, Pritzker, Epstein, & Blatt, P.A. and state as follows:

## I.    INTRODUCTION

1. Plaintiff Theresa Puffinberger brings this action seeking redress for the illegal practices of Defendants Commercion, LLC and Margolis, Pritzker, Epstein, & Blatt, P.A. in connection with the collection of a debt in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. (the "FDCPA"); the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law, § 14-201, et seq. (the "MCDCA"); the Maryland Consumer Protection Act, Md. Code Ann., Com. Law, § 13-101, et seq. (the "MCPA") and Maryland common law.

2. Plaintiff seeks statutory damages, attorney's fees and costs pursuant to the FDCPA, MCDCA, MCPA and Maryland common law.

3. The debt subject to this dispute is a "debt" as that term is defined by 15 U.S.C. § 1692a(5) of the FDCPA, as it arose out of a consumer credit card account.

4. Each debt subject to this dispute is a "consumer transaction" as that term is defined by Md. Code Ann., Com. Law, § 14-201(c) of the MCDCA.

5. Defendant attempted to collect the subject debt by engaging in "communications" as defined in 15 U.S.C. § 1692a(2) of the FDCPA.

6. Defendant is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

7. Plaintiff is a "consumer" as defined in 15 U.S.C. § 1692a(3) of the FDCPA.

## JURISDICTION AND VENUE

8. The Circuit Court has subject matter jurisdiction over the claims asserted herein because the Plaintiff seeks damages in excess of $30,000 and has exercised her right to a trial by jury.

9. The Circuit Court can exercise personal jurisdiction over each of the Defendants and each can be served with process in Maryland. Defendants are organized under the laws of Maryland and maintain principal places of business in Maryland.

10. Venue is appropriate in the Circuit Court for Anne Arundel County because the cause of action arose in Anne Arundel County and all Defendants reside and carry on business in Anne Arundel County, Maryland.

## PARTIES

11. Plaintiff Theresa Puffinberger ("Puffinberger" or "Plaintiff") resides at 1727 Saunders Way, Glen Burnie, MD 21061.

12. Commercion, LLC ("Commercion") is a limited liability company registered in the state of Maryland, with its principal place of business at 577 Hamburg Pike, Wayne, New Jersey 07470. The address that appears on the Defendant's LLC registration is Suite 222, 110 West Road, Baltimore, MD 21204. This LLC is no longer in good standing with the State of Maryland. The defendant has been a licensed "Collection Agency" in the state of Maryland since September of 2011. The address that appears on this license is the Defendant's New Jersey business address.

3

13. Defendant Margolis, Pritzker, Epstein, & Blatt, P.A. ("Attorneys") is a general practice law firm that routinely collects consumer debts in Maryland by filing contract actions against consumers on behalf of third-party debt-buyers. It regularly conducts business out of 110 West Rd. Suite 222, Towson, MD 21204 and also has an office at 10800 Midlothian Turnpike, Ste. 141, Richmond, VA 23235 Virginia.

## FACTUAL ALLEGATIONS RELATING TO DEFENDANTS' IMPROPER AND UNLAWFUL ACTS

### I.   Procedural History

14. Commercion, LLC, by and through its attorneys, filed a law suit against Puffinberger in 2012 relating to an alleged debt that was charged off.  The law suit was filed in the District Court of Maryland for Anne Arundel County, Case No. 070200027922012 on March 13, 2012.

15. Commercion, by and through its attorneys, filed a second law suit against Puffinberger in 2012 relating to the same exact alleged debt that was charged off. The law suit was filed in the District Court of Maryland for Anne Arundel County, Case No. 070200033782012 on March 23, 2012.

16. The last known charge on this alleged credit card account was April 9, 2008.  The last known date of payment on this alleged account was February 8, 2009.

17. On June 18, 2012, Commercion, by and through its attorneys, voluntarily dismissed the first action pursuant to Maryland Rule 3-506.

18. On May 25, 2012, attorneys for Commercion filed a trial hearing postponement and a trial date was set for July 31, 2012.

19. On July 6, 2012, attorneys for Commercion filed business records with the court, but did not properly serve Puffinberger with a copy of these records.

20. On July 31, 2012, the court entered judgment in favor of Puffinberger on the grounds that the case was filed outside of the three-year statute of limitations for civil actions under MD Code, Courts and Judicial Proceedings, § 5-101.

21. On August 3, 2012, Commercion, by and through its attorneys, filed a Motion to Amend or for a New Trial, to which Puffinberger filed an opposition.

22. On September 24, 2012, the court held a motions hearing and denied Commercion's motion on the basis that the case was filed outside of the three-year statute of limitations.

23. On October 24, 2012, the Defendant filed a De Novo appeal to the Circuit Court.

24. On February 15, 2013, the Circuit Court for Anne Arundel County conducted the De Novo hearing and ruled for Puffinberger on the basis that this case was outside of the three-year statute of limitations and the Defendants lacked sufficient evidence to prove their case.

25. A representative or witness from Defendant Commercion was not present for any of the above court proceedings.

## II.    The Nature of the Debt

26. Plaintiff Puffinberger's alleged debt was not typical of consumer debt cases in Maryland.  Unlike other cases, it was transferred six, arguably seven times, first from the original creditor Washington Mutual (WaMu) to Chase Bank, USA.

27. Subsequently, Chase Bank allegedly sold this debt to Forward Properties International, Inc. on or about December 11, 2009.

28. On or about February 25, 2010, this debt was allegedly sold from Forward Properties International, Inc. to National Credit Adjusters, LLC.

29. On or about August 4, 2011, ownership of this debt was allegedly transferred from National Credit Adjusters, LLC to PMD Financial Group, LLC.

30. On or about August 13, 2011, ownership of the debt allegedly transferred from PMD Financial Group, LLC to Mattia & Associates.

31. On or about August 13, 2011, Mattia & Associates, an online debt auctioneer, then allegedly transferred the debt to Vanz, LLC as part of a bundle of 3,932 accounts approximately worth over 20 million dollars. Upon information and belief, the sale was made via online auction at a small percentage of its total value.

32. On or about August 13, 2011, the debt allegedly transferred from Vanz, LLC to the Defendant as part of the transfer of a smaller package of debts.

33. No representation or warranty of title or enforceability was exercised or implied in any of these alleged transfers that occurred in the chain of title from Chase Bank to the Defendant.

34. The Bill and Sale of Assignment from Vanz, LLC to Commercion, LLC was signed by Thomas Mesce, Chief Financial Officer (CFO) for Vanz, LLC. Thomas Mesce has acknowledged that he is also CFO for Commercion, LLC.

35. Vanz, LLC and Commercion, LLC are located at the same address at 577 Hamburg Turnpike, Wayne, New Jersey.

36. Between 2008 and 2009, when Chase Bank, USA purportedly acquired and sold this alleged debt, news sources such as the *American Banker* reported serious internal problems with Chase's recordkeeping and accounting practices. Accounts custodians called the accounts acquired from Washington Mutual, such as the alleged Puffinberger account, "toxic debt" and reported serious issues with the chain of title and document history for these accounts.

37. Between 2012 and 2013, news sources such as the *American Banker* have reported that trial courts throughout the country have thrown out debt-buyer cases in which a third-party debt buyer claimed to have debts against former Washington Mutual card holders whose debts were transferred to Chase Bank, USA.

38. Because these stories have been so widely documented in major news sources, the Defendants had constructive and inquiry notice of the potential problems with this account.

39. Furthermore, Commercion, by and through its attorneys, included a contract in the complaint against Puffinberger that read "Chase Manhattan Bank." However, according to public records held by the Securities Exchange

7

Commission and press releases, the Chase Manhattan Bank merged with J.P. Morgan Chase in 2000. From 2000 on, the entity known as "Chase Bank U.S.A. has managed all credit card affairs." Since Puffinberger's alleged debt was supposedly a WaMu card until 2008, there is no reasonable way a Chase Manhattan Bank contract could even relate to these alleged transactions.

40. Based on the public press release, Defendants Commercion and the Collection Attorneys again had inquiry notice of this fact and should not have brought these actions against Puffinberger using an incorrect contract.

41. Defendants Commercion and its Attorneys also purported a charge-off date in their original court record without knowledge or proof of the actual charge-off date.

42. Plaintiff Puffinberger believed she had settled the alleged debt with Washington Mutual in 2008 and informed Commercion of this fact in March 2012.

## III.    Improper and Unlawful Acts

43. Defendants Commercion and its Attorneys aggressively pursued this debt by filing two court cases, a motion, and a De Novo appeal on what is clearly time-barred debt.

44. Defendants Commercion and Attorneys have been deliberately taking advantage of the court system to enable Commercion's telephone debt collectors to continue to pursue this debt alongside the court actions.

8

45. In early 2012, Plaintiff Puffinberger received routine debt-collection telephone calls from Defendant Commercion. Believing that she had settled this debt, Puffinberger asked for proof of the debt owed. Commercion did not provide her with proof, but continued to call at normal hours.

46. Then, once the court action was filed on March 23, 2012, the nature of these calls changed. Commercion representatives began to demand twice the amount of the original debt due. This error was likely based on the fact that Puffinberger had been incorrectly sued twice on the same debt. These calls demanded twice the value of the alleged debt continued until the first case filed on March 13, 2012 was dismissed in June of 2012.

47. Puffinberger's attorney noted her appearance on or around July 23, 2012 and properly served Commercion's Attorneys with notice of her appearance.

48. Commercion continued to call Puffinberger after receiving notice that Puffinberger had an attorney.

49. On June 26, 2012, Plaintiff Puffinberger suffered a work-related injury to her hip and hand and was undergoing treatment for her injuries in the summer, fall, and winter of 2012. Puffinberger had surgery on her hand on January 3, 2013. She is still recovering from this surgery and has not yet returned to work.

50. On July 31, 2012, counsel for Puffinberger informed Commercion and Attorneys of the Plaintiff's pending surgery and injury on the record in open court.

9

51. Between October to November 2012, after prevailing in the district court twice, Puffinberger continued to receive harassing daily debt collection calls from Commercion representatives named "Alex," "Angelique," and "John."

52. The representative named "John" threatened to sue Puffinberger for her belongings and vehicle titles. When Puffinberger told him of her judgment in district court, that she was represented by an attorney, and that she did not owe this debt, she was told "that's what they all say."

53. In November 2012, the Commercion representatives threatened to garnish Puffinberger's wages and intercept her income tax returns.

54. The Commercion representatives called after 9:00 pm, and said they "didn't know what time it was" because they were "in a different time zone."

55. To stop the persistent harassing calls, Plaintiff Puffinberger sent Defendant Commercion a formal Cease and Desist letter on November 29, 2012.

56. After sending this letter, the illegal calls subsided to a weekly basis. Most recently, on or about February 9, 2013, a Commercion representative named "Taj" called and again attempted to collect on this debt.

57. The Defendants' persistent collection efforts have exacerbated the physical pain of from Puffinberger's work related injuries and surgery.

58. The stress of going to court on February 15, 2013 and the anxiety of the appeal worsened these injuries, causing additional physical stress to her injuries from standing and waiting.

59. Also as a result of the third court date, Puffinberger had to delay medical treatment and postpone physical therapy appointments for treatment to her hand.

60. In addition to prescription pain medication for her injuries, the Plaintiff has taken prescription antidepressants such as Xanax to cope with the additional stress and anxiety.

61. Puffinberger has also suffered from migraines, dizziness, high blood pressure, stress, difficulty sleeping, headaches, and nausea.

62. Commercion and Attorneys' actions have also resulted in the Plaintiff's fear of making new financial decisions, worry that she will not be able to cosign her children's school loans, will not be able to care for her minor child, humiliation in the community, fear that she would not be able to get a new car, stress on her marriage, and fear that she will not be able to receive a promotion to a supervisory position in her state government employment.

63. Defendants Commercion and Attorneys have willfully and knowingly pursued this debt outside of the statute of limitations.

## COUNT I
## Violation of the Fair Debt Collection Practices Act
## (Against all Defendants)

64. Plaintiff incorporates the foregoing paragraphs.

65. Pursuant to U.S.C. § 1692c(a)(1), a debt collector is prohibited from contacting a consumer at unusual or inconvenient hours of the day. In the absence of knowledge of circumstances to the contrary, a debt collector shall

11

assume that communicating with a consumer before 8 o'clock antemeridian and after 9 o'clock postmeridian is inconvenient.

66. Pursuant to §1692(d), a debt collector is prohibited from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. This specifically includes repeated and continuous telephone communication made with the intent to annoy, abuse, or harass any person at the called number. §1692d(5).

67. Pursuant to §1692e a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. This prohibition specifically includes:

    a.    The false representation of the character, amount or legal status of any debt §1692e(2);

    b.    The implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person §1692e(4);

    c.    Threats to take legal actions that cannot be lawfully taken §1692e(5);

    d.    Threats to communicate the debt to third parties and credit reporting agencies §1692e(8);

e.     The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization §1692e(14).

68. Pursuant to §1692f, a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. This specifically includes any attempt to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. §1692f(6).

69. Pursuant to §1692k(a)(1) and §1692k(a)(3) , a debt collector in violation of the FDCPA is liable for actual damages, court costs and attorney's fees.

70. Defendant Commercion violated the FDCPA in calling the Plaintiff after knowledge that the Plaintiff had an attorney, notice to cease calls, and notice of a judgment in her favor. During these phone calls the Defendant threatened to intercept her tax returns, garnish her wages, and take title to her vehicles.

71. Defendants Commercion and Attorneys violated the FDCPA by attempting to collect on a time-barred debt. When the Defendants brought suit against the Plaintiff, the Defendants had reason to believe that this debt was time-barred and had knowledge or reckless disregard as to the veracity of the supporting documentation.

72. Defendants violated the FDCPA by attempting to collect on a debt from WaMu and Chase Bank, USA when the lack of credibility of such debts was a subject of public knowledge.

13

73. Defendants violated the FDCPA by using incorrect contract documents from Chase Manhattan Bank in their complaint.

74. By filing suit on this false and time-barred debt, the Defendant forced the Plaintiff to bear significant legal expenses related to defending herself in court.

75. By engaging in the aforementioned illegal debt collection practices, the Defendant subjected the Plaintiff to actual damages.

WHEREFORE, Plaintiff requests the following relief from these Defendants: statutory damages in the amount of $1,000, actual damages for exacerbation of physical injuries in excess of $75,000, award reasonable attorney's fees, litigation expenses, and costs, and provide such other or further relief as the Court deems appropriate.

## COUNT II
### Violation of the Maryland Consumer Debt Collection Act
### (Against all Defendants)

76. Plaintiff incorporates the foregoing paragraphs.

77. The Defendant is a "collector" under the Maryland Consumer Debt Collection Act (MCDCA) § 14-201(b).

78. Pursuant to § 14-202(6) in attempting to collect an alleged debt, a collector may not communicate with the debtor with the frequency, at unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor.

79. Pursuant to § 14-202(8), a collector may not claim, attempt, or threaten to enforce a right with knowledge that the right does not exist.

80. Pursuant to § 14-203, a collector in violation of the MCDCA is liable for any damages proximately caused by the violation. This explicitly includes damages for emotional distress or mental anguish suffered with or without accompanying physical injury.

81. Defendant Commercion violated the MCDCA by calling the Plaintiff after she received a judgment in her favor, with the knowledge that she was represented by an attorney, and demanding payment on a time-barred debt. When making these calls, the Defendant threatened to garnish the Plaintiff's paychecks, intercept tax returns, and seize title to her vehicles. At the time these threats were made, the Defendant had no legal right to take any of these actions and had knowledge or reckless disregard as to the falsity of the debt allegedly owed.

82. Defendant Attorneys further violated the MCDCA by bringing this action outside of the statute of limitations. These actions had the additional effect of prolonging the time period in which Commercion representatives made harassing phone calls to Plaintiff Puffinberger.

83. Defendants violated the MCDCA by attempting to collect on a debt from WaMu and Chase Bank, USA when the lack of credibility of such debts was a subject of public knowledge.

84. Defendants violated the MCDCA by using incorrect contract documents from Chase Manhattan Bank in their complaint.

85. As a result of the Defendants' illegal actions to collect this debt, the Plaintiff endured legal costs in order to defend herself in court.

86. The Defendants' illegal actions in collecting this debt caused the Plaintiff to suffer additional pain from her existing physical injuries, and much distress and mental anguish.

> WHEREFORE, Plaintiff respectfully requests the Court enter judgment in favor of Plaintiff and against Defendant for actual and emotional damages in excess of $75,000, interest and costs, attorney's fees, and such other relief as the nature of the case may require.

## COUNT III
## Violation of the Maryland Consumer Protection Act
## (Against all Defendants)

87. Plaintiff incorporates the foregoing paragraphs.

32. Plaintiff is a consumer as defined by the Maryland Consumer Protection Act ("MCPA"), Maryland Code Annotated, Commercial Law § 13-101(c).

33. Pursuant to Section 13-303(1) of the MCPA, unfair or deceptive trade practices in the sale of consumer goods, consumer services and the extension of consumer credit are prohibited.

34. Pursuant to § 13-301(14)(iii) of the MCPA, any violation of the MCDCA is also a violation of the MCPA.

35. The Defendants violated these subsections by suing and continuing lawsuits against the Plaintiff for the amount allegedly owed.

16

36. The Defendants violated these subsections by using the District Court of Maryland to attempt to collect time-barred debts.

37. As a direct consequence of Defendants' violation of the MCPA, Plaintiff and the class she seeks to represent have suffered an injury or loss and are entitled to actual damages and attorneys' fees pursuant to MCPA §13-408.

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in favor of Plaintiff and against Defendant for actual damages and losses (included economic and non-economic) in excess of $75,000, award reasonable attorney's fees, litigation expenses and costs, and grant Plaintiff such other and further relief as this court finds necessary and proper.

Respectfully Submitted,


Kathleen P. Hyland, Esq.
CIVIL JUSTICE, INC.
520 W. Fayette St.
Suite 410
Baltimore, MD 21201
Phone: (410) 706-0174
khyland@civiljusticenetwork.org
*Attorney for Plaintiff*

17

## REQUEST FOR TRIAL BY JURY

Plaintiff requests a trial by jury of any claims that may be determined by a jury.

Dated: March 12, 2013.

Kathleen P. Hyland, Esq.

TRUE COPY,

TEST: Robert P. Duckworth, Clerk

By:_____Deputy